IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

**FILED**
M. _____ 10-21 20 13
DAVID J. MALAND, CLERK
U.S. DISTRICT COURT
By _____
DEPUTY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. 1:12-CR-29(1) (Judge Marcia Crone) |
| JERRY TREVINO (1) | § | |

## FACTUAL BASIS AND STIPULATION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the United States of America, by and through the undersigned Assistant United States Attorney in and for the Eastern District of Texas, joined by **Jerry Trevino,** defendant, and his counsel of record, Rey Morin, and presents this factual basis and stipulation in support of the defendant's plea of guilty to Count One indictment filed herein, and, in support thereof, would show the following:

1. That, defendant, hereby stipulates and agrees as to the facts recited in paragraph 5. Defendant stipulates and agrees to the truth of all matters set forth in these paragraphs in this factual basis and stipulation, and agrees that such admission may be used by the Court in support of his plea of guilty to Count One of the indictment, alleging a violation of 21 U.S.C. § 846, conspiracy to distribute and to possess with intent to distribute five (5) kilograms or more of a Schedule II controlled substance, namely: cocaine HCL.

2. That the defendant, who is pleading guilty to such indictment, is one and the same person charged in the indictment.

3. That the crime alleged in the indictment occurred on or about the dates and places specified in the indictment;

4. That the events described in the indictment occurred in the Eastern District of Texas and elsewhere;

5. That, had this case proceeded to trial, the government would have proven each and every essential element of the offense, beyond a reasonable doubt, through the testimony of witnesses, including expert witnesses, and through exhibits, which would have demonstrated the following:

Overview of the criminal scheme:

As to Count One:

> (a) Beginning in the early 2000s, the exact date being unknown, **Jerry Trevino** (**Trevino**) began to distribute cocaine HCL in the Houston, Texas area. **Trevino** distributed cocaine HCL from his business, the Vera Cruz restaurant located at 4331 Irvington Blvd., Houston, Texas (Vera Cruz);
>
> (b) In April of 2011, **Trevino** was also distributing cocaine HCL out of the Vera Cruz. Some of that cocaine HCL was ultimately being distributed in Port Arthur, Texas, Eastern District of Texas in the form of cocaine base ("crack cocaine");
>
> (c) One of those distributors of cocaine HCL received from the **Trevino** drug trafficking organization (DTO) was Shedrick Moore (Moore). In March of 2011 undercover law enforcement officers initiated a series of covert purchases ("buy-walks") of cocaine base from Moore that had been "cooked" by Moore from cocaine HCL supplied by **Trevino's** DTO:
>
>> (1) On March 29, 2011, 5.46 grams of cocaine base was purchased from Moore in exchange for $200.00. Moore was observed leaving his home at 3440 11th St., Port Arthur, TX, Eastern District of TX and traveling to the location of the drug deal at 600 West Gulfway Dr., Port Arthur, TX, immediately prior to the controlled delivery ("buy walk");
>>
>> (2) On April 18, 2011 a second controlled purchase of 3.73 grams of

cocaine base was made from Moore in exchange for $200.00. Moore was observed leaving his home at 3440 11th St., Port Arthur, TX, Eastern District of TX and traveling to the location of the drug deal at 600 West Gulfway Dr., Port Arthur TX, immediately prior to the controlled delivery ("buy walk").

(3) On April 21, 2011, investigating officers executed a search warrant at Moore's home at 3440 11th St., Port Arthur, TX, Eastern District of TX. During that search, officers located and seized 77.74 grams of cocaine base ("crack cocaine") (as was determined by laboratory analysis) inside the residence;

(d) Moore elected to cooperate with law enforcement and identified his source of supply for cocaine HCL sourced from the **Trevino** DTO as Willie Netherly (Netherly);

(e) Once this information was obtained, investigators initiated a covert purchase of cocaine HCL from Netherly that was followed by his arrest. That took place on April 27, 2011 at Netherly's residence, 15830 Flagstone Walk Way, Harris County, TX. On that date, Moore made a controlled purchase of eighteen (18) ounces of cocaine HCL from Netherly with $1,395.00 in impressed funds while operating under the close supervision of law enforcement. When that transaction was complete, Netherly was arrested. A subsequent search of Netherly's residence and vehicle produced two-hundred-sixty-two (262) grams of cocaine HCL (for a total of 499.92 grams of cocaine HCL seized as determined by laboratory analysis) and thirty-eight-thousand-seven-hundred-sixty-seven dollars ($38,767.00) in cash.

(f) Netherly was arrested and elected to cooperate with law enforcement. He identified his source of supply for cocaine HCL as **Trevino.** Netherly also agreed to provide proactive substantial assistance. In that aspect of the investigation Netherly was fitted with miniature audio and video recording devices and, acting under the control of supervising agents, he engaged in a number of covert purchases ("buy walks") of cocaine HCL from **Trevino** and other members of his DTO at the Vera Cruz;

(g) On May 23, 2011 Netherly met with **Trevino** inside the office area of the Vera Cruz. **Trevino** and a DTO member were observed wrapping kilograms of cocaine at that time. Trevino offered Netherly five (5) kilograms of cocaine HCL at that meeting;

(h) On May 27, 2011 Netherly was sent to the Vera Cruz by controlling officer for the purpose of buying one (1) kilogram of cocaine. After negotiating that purchase

with **Trevino**, Netherly received one (1) kilogram of cocaine HCL ( 995.5 grams as later determined by laboratory analysis) from DTO members Vincent Monte (Monte) and Alvin Nelson (Nelson). Netherly surrendered the kilogram received from **Trevino** to law enforcement immediately after leaving the Vera Cruz;

(i) On May 28, 2011 Netherly returned to the Vera Cruz and made a payment of twenty-three-thousand-four-hundred dollars ($23,400.00) (in impressed funds) to Monte for the kilogram of cocaine HCL received the previous day;

(j) On June 9, 2011, Netherly, operating under police supervision, returned to the Vera Cruz after receiving a text message from Monte advising that multiple kilograms of cocaine were available for sale from **Trevino**. Once at the Vera Cruz, **Trevino** offered Netherly two (2) kilograms of cocaine HCL. Netherly stated he could only take one (1) kilogram. **Trevino** then handed one (1) kilogram of cocaine HCL (985.3 grams as determined by laboratory testing) to Monte who, in turn, delivered that kilogram to Netherly. During that same transaction **Trevino** told Netherly:

> (1) He had ten (10) kilograms of cocaine HCL available for distribution and
>
> (2) Netherly needed to plan on picking up five (5) kilograms of cocaine HCL the following week.

Netherly surrendered the kilogram received from **Trevino** to law enforcement immediately after leaving the Vera Cruz;

(k) On June 11, 2011 Netherly was given twenty-three-thousand-four-hundred dollars ($23,400.00) in impressed funds by investigators to pay for the kilogram of cocaine HCL received from **Trevino** on June 9, 2011. Netherly returned to the Vera Cruz and gave the money to **Trevino** and Monte, who counted it in his presence;

(l) On June 23, 2011, Netherly operating under police supervision again, went to the Vera Cruz and met with **Trevino**. Netherly met with **Trevino** and asked to buy seven (7) kilograms of cocaine HCL. **Trevino** responded that he had nine (9) kilograms of cocaine HCL available. **Trevino** instructed Netherly to return later that day to receive the nine (9) kilograms of cocaine HCL;

(m) Later that same day, June 23, 2011, Netherly (under law enforcement supervision) returned to the Vera Cruz and was met by **Trevino** in the parking lot. At that time, Nelson walked from the business office building of the Vera Cruz carrying a black canvas bag. Nelson handed the bag to Monte who, in turn, placed the bag in the trunk of Netherly's car. When Netherly departed and surrendered

that bag to investigating officers it was found to contain 8.21 kilograms of cocaine HCL, as was later determined by laboratory analysis;

(n) Immediately after receiving the 8.21 kilograms from Netherly, investigating officers returned to the Vera Cruz and arrested **Trevino**. **Trevino** was armed with a loaded 9mm semi-automatic pistol in his waist band at the time of his arrest at the Vera Cruz;

(o) Nelson was also arrested at that time. Post arrest Nelson gave written consent to search his apartment which was located in the same building as the business office of the Vera Cruz. Officers found three (3) kilograms of cocaine HCL in Nelson's apartment during that search. A loaded .45 caliber firearm fitted with a suppressor was discovered in Nelson's apartment. Nelson was found to have two rounds of .45 caliber ammunition on his person;

(p) At the time of his arrest, **Trevino** allowed a canine sweep of his restaurant office by a trained narcotics detection dog. During that sweep, the K9 alerted on a safe which was located in the office. **Trevino** advised the safe belonged to his father, Gerardo Trevino. Investigators contacted Gerardo Trevino who gave officers permission to open the safe by any means necessary. Subsequent search produced twenty-two-thousand dollars ($22,000.00) in United States funds bundled in one-thousand dollar ($1,000.00) amounts;

(q) Properly qualified laboratory technicians would have testified that the contraband seized during the period of the defendant's criminal episode was cocaine HCL and cocaine base, in the amounts indicated above.

DEFENDANT'S SIGNATURE AND ACKNOWLEDGMENT

6. I have read this factual basis and stipulation and the indictment or have had them read to me and have discussed them with my attorney. I fully understand the contents of this factual basis and stipulation and agree without reservation that the United States can prove each of these acts and that it accurately describes the events about my acts and the events as recited as I know them.

Dated: 10/21/2013

_____
Jerry Trevino

Defendant

## DEFENSE COUNSEL'S SIGNATURE AND ACKNOWLEDGMENT

7. I have read this factual basis and stipulation and the indictment and have reviewed them with my client, **Jerry Trevino**. Based upon my discussions with the defendant, I am satisfied that the defendant understands the factual basis and stipulation as well as the indictment, and is knowingly and voluntarily agreeing to these stipulated facts.

Dated: Oct. 21, 2013

_____
Rey Morin
Attorney for the Defendant


Respectfully submitted,

JOHN M. BALES
UNITED STATES ATTORNEY

_____
John A. Craft
ASSISTANT UNITED STATES ATTORNEY